**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DANIEL G.,**

       **Plaintiff,**

 vs.               **5:18-CV-1255
                     (MAD)**

**COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,**

       **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **MEGGESTO, CROSSETT &**<br>**VALERINO, LLP**<br>313 East Willow Street<br>Suite 201<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **KIMBERLY A. SLIMBAUGH, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>**OFFICE OF REGIONAL GENERAL**<br>**COUNSEL REGION II**<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **KRISTINA D. COHN, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

  Plaintiff, Daniel G. ("Plaintiff"), commenced this action on October 25, 2018, pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security denying Plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1. On June 28, 2015, Plaintiff protectively filed an application for disabilities insurance benefits, alleging an onset of disability of July 1, 2008. *See*

Administrative Transcript ("Tr.") at 15, 97. On July 2, 2015, Plaintiff protectively filed an application for SSI. *See Id.* at 96. These applications were denied and Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"). *See id.* at 96-97, 105-06. A hearing was held before ALJ Shawn Bozarth on July 12, 2017. *See id.* at 35. On December 13, 2017, the ALJ issued a decision denying Plaintiff's application. *See id.* at 15-30. Plaintiff subsequently requested review by the Appeals Council and was denied such review. *See id.* at 1, 7. Presently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 10, 11.

## II. BACKGROUND

At the time of his initial application, Plaintiff was twenty years old. *See* Tr. at 178. Plaintiff has his GED and is one class shy of a bachelor's degree. *See id.* at 41-42, 62. Prior to the alleged onset date, Plaintiff worked as a pizza delivery driver and in an administrative capacity at his father's place of work. *See id.* at 60-61. Currently, Plaintiff resides with his grandmother, but is supported by his parents. *See id.* at 43. The record indicates that Plaintiff suffers from a variety of mental health issues for which he undergoes treatment.

In 2006, Plaintiff was diagnosed with depression, panic disorder, somatization disorder, and anxiety disorder. *See id.* at 297-306. Subsequently, Plaintiff began treatment for his mental health problems. Plaintiff was treated by Dr. James Donovan ("Dr. Donovan") every four to six weeks for over ten years. *See id.* at 321. Throughout that time, Plaintiff was diagnosed with attention deficit disorder without hyperactivity, panic disorder without agoraphobia, and somatic symptom disorder. *Id.* Plaintiff's symptoms included anxiety, mild agoraphobia, depression, attention deficits, and decreased focus. *Id.* In 2016, Plaintiff reported or exhibited the following symptoms: anhedonia; decreased energy; feelings of guilt or worthlessness; generalized persistent

2

anxiety; mood disturbance; difficulty thinking or concentrating; change in personality; recurrent obsessions or compulsions; seclusiveness or autistic thinking; emotional withdrawal or isolation; persistent irrational fear of a specific object, activity, or situation; disorientation to time and place; flight of ideas; inflated self-esteem; and easy distractibility. *See id.* at 346.

The record shows that Plaintiff is able to maintain a stable treatment and medicine regimen, even when he had to relocate to a new state. *See id.* at 350-67. Plaintiff has never had any in-patient psychiatric hospitalization and his only known hospitalization related to his mental health issues was for a panic attack in January 2017. *See id.* at 356.

### III. DISCUSSION

**A.     Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

3

In reviewing a final decision by the Commissioner under Title 42, United States Code Section 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2008, the alleged onset date. *See* Tr. at 18. At step two, the ALJ concluded that Plaintiff had the following severe impairments: anxiety disorder, depression, attention deficit hyperactivity disorder ("ADHD"), and panic disorder with

4

agoraphobia. *See id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* The ALJ then found that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [t]he individual should be limited to low stress jobs. A low stress job is one in which occasional decisions, changes in workplace setting, and workplace judgments are required. The individual should be limited to jobs with simple, repetitive work routines that are goal oriented and not oriented toward a production line or in assembly line. The individual should only have occasional contact with the public and co-workers.

*Id.* at 20. At step four, the ALJ found that Plaintiff had no past relevant work. *See id.* at 28. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *See id.* at 28-29. The vocational expert testified that a hypothetical individual of Plaintiff's age, with his education, past relevant work experience, and RFC could perform the representative occupations of industrial cleaner, packager, and auto-detailer. *See id.* at 28-29. The ALJ relied on this testimony to determine that Plaintiff was not disabled as defined by the Social Security Act. *See id.* at 29-30.

**C.  Analysis**

   *1. Weighing the Opinion Evidence*

      **a. Dr. Janine Shapiro**

Plaintiff claims that the ALJ failed to properly evaluate the opinion of consultative examiner, Dr. Janine Shapiro. *See* Dkt. No. 10 at 14. Specifically, Plaintiff argues that the ALJ failed to address Dr. Shapiro's finding that Plaintiff's psychiatric problems "may significantly interfere with [Plaintiff's] ability to function on a daily basis." *See id.* at 14-15. Plaintiff contends that the ALJ rejected this part of Dr. Shapiro's opinion and failed to explain his reasoning for

5

doing so. *Id.* The Commissioner argues that the statement at issue is not a medical opinion and, thus, did not need to be considered by the ALJ. *See* Dkt. No. 11 at 8. In the alternative, the Commissioner argues that the ALJ was not required to explicitly address each and every piece of evidence that he considered. *See* Dkt. No. 11 at 8-9.

A medical opinion is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including [] symptoms, diagnosis and prognosis, what [a plaintiff] can still do despite impairment(s), and [a plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "Opinions on some issues, . . . are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination decision of disability." *Id.* at § 404.1527(d). Such opinions include "[a] statement by a medical source that [a plaintiff is] 'disabled' or 'unable to work. . .'" *Id.* at § 404.1527(d)(1).

The statement at issue comes from Dr. Shapiro's psychiatric examination report. *See* Tr. at 329-33. In her description of Plaintiff's limitations, Dr. Shapiro stated that "[r]esults of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis." *Id.* at 332. The portion of the statement which discusses Dr. Shapiro's finding that Plaintiff suffers from psychiatric problems falls within the definition of a medical opinion, as it describes Plaintiff's symptoms and diagnosis. *See* 20 C.F.R. § 404.1527(a)(1). However, by stating that Plaintiff's psychiatric problems "may significantly interfere with his ability to function on a daily basis," Dr. Shapiro expressed a dispositive opinion reserved for the ALJ. *See id.* at § 404.1527(d). Accordingly, the Court finds that the statement at issue was not a medical opinion which must be considered by the ALJ.

To the extent that Plaintiff argues that Dr. Shapiro's remaining opinions were too vague to be relied upon by the ALJ, the Court is not convinced. *See* Dkt. No. 10 at 14. Here, the ALJ considered Dr. Shapiro's findings and found them to be consistent with her observations of Plaintiff. *See* Tr. at 27. Specifically, the ALJ noted that

> [Dr. Shapiro] opined that the claimant would have moderate limitation regarding his ability to maintain attention and concentration for tasks, attend to a routine and maintain a schedule, and consistently relate to and interact well with others. He would have mild to moderate limitation regarding his ability to deal with stress and mild limitation performing complex tasks, learning new tasks, and making appropriate decisions. No limitations were noted regarding the claimant's ability to understand and follow simple instructions and directions, and perform simple tasks.

*Id.* This assessment is supported by the record evidence.

During his examination with Dr. Shapiro, Plaintiff presented with coherent and goal directed thought processes. *See* Tr. at 331. Plaintiff interacted appropriately with the examiner, appeared cooperative, and demonstrated adequate social skills. *Id.* Dr. Shapiro noted that Plaintiff's attention and concentration were "mildly-moderately impaired" because of his attention deficit disorder. *Id.* However, Dr. Shapiro noted that he was able to count and perform other recall tasks. *Id.* Further, Dr. Shapiro found that Plaintiff's memory skills were intact, his cognitive functioning was average, and he demonstrated fair insight and judgment. *Id.* The record also indicated that Plaintiff was able to engage in every day tasks such as grooming, preparing food, cleaning, driving, and managing money. *Id.* at 332. Finally, Plaintiff indicated that he spends his days reading, teaching himself computer languages, and playing guitar. *Id.* The Court finds, as the ALJ found, that Dr. Shapiro's assessments were consistent with her noted observations and the treatment record as a whole. *Id.* Accordingly, the Court finds that the ALJ

7

properly weighed the medical opinion of Dr. Shapiro and that his conclusions are supported by substantial evidence.

### b. Dr. James Donovan

Plaintiff also argues that the ALJ failed to properly evaluate the opinion of Dr. Donovan, Plaintiff's treating psychiatrist. *See* Dkt. No. 10 at 17. Specifically, Plaintiff claims that the ALJ assigned Dr. Donovan's opinion "little weight" despite the fact that the opinion was consistent with Dr. Shapiro's opinion. *Id.* at 18-19. Plaintiff argues that Dr. Donovan's opinion should have been assigned greater weight to the extent that it was consistent with Dr. Shapiro's opinion. *Id.* at 19.

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotation omitted). The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion is contradicted by other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence." *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) (other citation omitted).

8

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Petrie v. Astrue*, 412 Fed. Appx. 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability'") (quotation omitted); *Hudson v. Colvin*, No. 5:12-CV-0044, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence"), *report and recommendation adopted*, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013). Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 74, 77 (2d Cir. 2012) (citations omitted).

Here, the ALJ assigned Dr. Donovan's opinion "limited weight." *See* Dkt. No. 9 at 26. The ALJ noted that Dr. Donovan's opinion regarding the severity of Plaintiff's impairments was inconsistent with the relatively stable course of treatment that Plaintiff has undergone over the

9

last ten years. *See* Tr. at 26-27. The ALJ suggested that if Plaintiff's limitations were as severe as Dr. Donovan's opinion made them seem, then Plaintiff likely would have experienced greater instability in his treatment, *i.e.*, frequent episodes of psychiatric hospitalization or variation in his medication regimen. *See id.* Additionally, the ALJ noted that some of Dr. Donovan's previous assessments contradict his opinions regarding Plaintiff's limitations. *See id.* at 27. For example, Dr. Donovan indicated on his evaluation that Plaintiff was unable to meet competitive standards in his ability to maintain attention for two hour segments and perform at a consistent pace without an unreasonable number and length of rest periods. *See id.* at 347. However, in previous sessions, Dr. Donovan noted that Plaintiff was able to retain intact attention, concentration, recent memory, remote memory, immediate memory, and provide information during most treatment visits. *See id.* at 321.

While the ALJ may not have explicitly listed in 20 C.F.R. § 404.1527(c), it is clear that the ALJ conducted the proper analysis. The ALJ noted that Dr. Donovan was Plaintiff's treating specialist for approximately ten years and that Plaintiff saw Dr. Donovan every four to six weeks. *See id.* at 26. The ALJ considered the evidence that Dr. Donovan advanced in support of his conclusions and the other record evidence in weighing the opinion. *See id.* at 26-27. Ultimately, due to the inconsistencies between the opinion and the record evidence, the ALJ assigned limited weight to the opinion. *See id.* at 26. Accordingly, the Court finds that the ALJ properly weighed Dr. Donovan's opinion and that his conclusion is supported by substantial evidence.

### *2. Assessment of Plaintiff's Credibility*

Plaintiff alleges that the ALJ failed to consider all of the factors outlined in 20 C.F.R. § 404.1529(c)(3) in evaluating Plaintiff's testimony. *See* Dkt. No. 10 at 15-16.

"While the ALJ is required to take into account a claimant's reports of pain, symptoms, and other indicia of impairment, she is not required to accept those reports 'without question.'" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); 20 C.F.R. § 416.929(a). Instead, she "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ's credibility findings receive "special deference" because of his ability to observe the claimant's testimony. *See Yellow Freight Sys., Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994). Like other findings of the ALJ, the credibility finding is reviewed for whether it is supported by substantial evidence. *See Hopkins v. Colvin*, No. 13–CV–4803, 2014 WL 4392209, \*5 (S.D.N.Y. Sept. 5, 2014); *Torres v. Colvin*, No. 12–CV–6527, 2014 WL 241061, \*12 (S.D.N.Y. Jan. 22, 2014).

The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and other limitations, and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant. *See Marcus*, 615 F.2d at 27. The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

11

*Genier*, 606 F.3d at 49 (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* Social Security Ruling ("SSR") 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, inter alia, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that

it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> it is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *See* Tr. at 25. However, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and record evidence. *See id.* The ALJ specifically examined Plaintiff's claim that his "attention and social skills are so impaired as to preclude him from sustaining attention and concentration for at least two hours at a time or maintaining any social contact in the work setting." Tr. at 25. In examining Plaintiff's credibility, the ALJ noted that, despite Plaintiff's claims that he was unable to interact with new people, the record evidence indicated that he was able to interact well with new treatment providers and regularly demonstrated appropriate affect. *See id.* Additionally, the ALJ noted that Plaintiff's claims that he cannot maintain attention and concentration are belied by his testimony. *Id.* Plaintiff testified, and the record evidence supports, that his daily activities included reading books on philosophy and teaching himself computer languages. *See id.* at 45-46, 332. Based on this evidence, the ALJ

13

found that Plaintiff's daily activities require above-average intelligence and reasoning activities. *Id.* at 25. Further, the ALJ considered Plaintiff's stable treatment and medication regimen that has remained relatively unchanged since 2009. *Id.* at 26. The ALJ found that this evidence contradicted Plaintiff's subjective complaints regarding the intensity, persistent, and limiting effects of his symptoms. *See id.* at 25-26. Upon review of the ALJ's decision, it is clear that the ALJ properly evaluated Plaintiff's credibility and that his determination is supported by substantial evidence.

### *3. Proffer of Post-Hearing Evidence*

Following the hearing in this case, the ALJ received an interrogatory response from Dr. Sharon Kahn which he relied upon in reaching his determination as to Plaintiff's disability. *See* Tr. at 263-64, 393-401. Plaintiff claims that neither he nor his representative received a letter of proffer regarding this opinion, as is required by HALLEX I-2-7-1. *See* Dkt. No. 10 at 16-17.

"The Social Security Administration's Hearings, Appeals, and Litigation manual (HALLEX), . . . requires an ALJ to 'proffer' post-hearing interrogatory responses to the claimant." *Gallo v. Colvin*, No. 15-CV-9302, 2016 WL 7744444, *12 (S.D.N.Y. Dec. 23, 2016) (citing HALLEX I-2-7-1). "[T]hat is, give [him] an opportunity to review the new evidence, comment on it, object to it, attempt to refute it by offering other evidence, and . . . 'cross-examine the author(s) of the new evidence.'" *Id.* There is a "well-established . . . presumption that items mailed, in due course, were received by the addressee." *Dioguardi v. Rochester Laborers Pension Fund*, 317 F. Supp. 2d 216, 219 (W.D.N.Y. 2004) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) (other citations omitted)). "The mere denial of receipt does not rebut that presumption. There must be – in addition to denial of receipt – some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice

14

was mailed becomes unreasonable." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985) (citation omitted).

Here, the record contains the proffer which Plaintiff claims to have never received. *See* Tr. at 263. The notice was addressed to Plaintiff's counsel at the address of record. *Id.* In response, Plaintiff simply claims that the letter of proffer was never received. *See* Dkt. No. 10 at 16. This allegation alone is insufficient rebut the presumption of receipt. *See Meckel*, 758 F.2d at 817. The Court finds that Plaintiff has failed to rebut the presumption that the proffer, which was mailed in due course, was not received by Plaintiff or his counsel. Even assuming the ALJ did not send the proffer letter, Plaintiff has failed to demonstrate prejudice. Dr. Kahn found that Plaintiff had moderate limitations in his ability to carry out complex instructions, make judgments on complex work-related decisions, understand and remember complex instructions, respond to changes in a routine work setting, and interact appropriately with the public and supervisors. *See* Tr. at 393-94. This opinion is consistent with the record evidence and other medical opinions relied upon by the ALJ. *See id.* at 332, 347, 369. Thus, although the Court does not find that the ALJ violated HALLEX I-2-7-1, to the extent that an error could be found, it did not result in any prejudice to Plaintiff.

### *4. Residual Functional Capacity*

Finally, Plaintiff challenges the ALJ's RFC determination. However, Plaintiff's only objection to the RFC determination is based on Plaintiff's belief that the RFC determination did not address the ALJ's finding that Plaintiff has moderate limitations in concentration and persistence. *See* Dkt. No. 10 at 20; *see also* Tr. at 19. The Commissioner argues that, although the ALJ did not expressly include Plaintiff's limitations in concentration and persistence, they

15

were implied in the ALJ's determination that Plaintiff could only perform simple and repetitive work. *See* Tr. at 5-6, 12.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations)." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Additionally,

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96–8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004). "[T]he ALJ's mental RFC finding 'must be expressed in terms of work-related functions.'" *Sanderson v. Astrue*, No. 08-CV-1177, 2011 WL 1113856, *4 (N.D.N.Y. Jan. 19, 2011) (quoting SSR 96-8p, 1996 WL 374184, at *6)). "The Ruling lists the following mental abilities as 'work-related': understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers, and work situations; and dealing with changes in a routine work setting." *Id.*

An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand. *See Compo v. Commissioner of Soc. Sec.*, No. 6:05–CV–973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07–CV–0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted). When making an RFC determination, an ALJ must specify those functions the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1998)). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Here, the Court finds that the ALJ's RFC determination included consideration of Plaintiff's limitations in concentration and persistence. The ALJ concluded that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [t]he individual should be limited to low stress jobs. A low stress job is one in which occasional decisions, changes in workplace setting, and workplace judgments are required. The individual should be limited to jobs with simple, repetitive work routines that are goal oriented and not oriented toward a production line or in assembly line. The individual should only have occasional contact with the public and co-workers.

*See id*. at 20. Courts in similar situations have found that an ALJ did not need to thoroughly discuss each moderate limitation in an RFC when the RFC restricted the plaintiff to unskilled worked not involving complex tasks. *See Brown v. Comm'r of Soc. Sec.*, No. 3:15-CV-685, 2016

WL 3351021, *6 (N.D.N.Y. June 14, 2016) (collecting cases).[1] Additionally, the ALJ considered all of the required work-related mental abilities. *See* SSR 96-8p, 1996 WL 374184, at *6. Specifically, the ALJ addressed Plaintiff's abilities to understand and follow instructions; use judgment in making work-related decisions; respond to supervisions, co-workers, and work situations; and deal with changes in the work setting. *See id.*; *see also* Tr. at 20.

It is clear that the ALJ considered detailed information as to Plaintiff's mental abilities. The ALJ considered the record evidence and the available medical opinions in determining Plaintiff's ability to perform the mental demands of work activity, and sufficiently described his findings. *See id.* at 20-28; 20 C.F.R. § 404.1545(c). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

---

[1] For the same reasons, the Court finds that the ALJ's hypothetical questions to the vocational expert included consideration for Plaintiff's limitations in concentration and persistence. *See* Dkt. No. 10 at 20.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 3, 2020
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge